The case is, I'm going to botch this, sorry, Chiaradonna v. Department of Veterans Affairs. Mr. Tobin, when you're ready. And can you correct me on your client's last name? Thank you, Your Honor. You're pretty close. Okay. It's Chiaradonna. Chiaradonna. Like Cher. Thank you. Good morning, Your Honor. May it please the Court, I've reserved five minutes for rebuttal. I'm here today on behalf of Ms. Chiaradonna, who is a nurse practitioner, and she's appealing the denial of her whistleblower claim. Previously, she'd worked for the VA literally days short of her two-year probation ending. And for over a year, she was a successful nurse practitioner in California. She moved to Florida, and she chose to work in orthopedics, something she had no experience in, she had never done before. She worked at basically a satellite facility in Lee County, the Lee County Medical Facility, which is a satellite facility of the Bay Pines VA Hospital in Tampa Bay, about two and a half hours away. And the main thrust of her appeal, as you see in the briefs, is the failure of the administrative judge to consider and rope into the analysis of the decision to deny her appeal the merit system principles, which are principles that apply to all federal employees. Contrary to the agency's position, we're not re-arguing facts here. What we are doing is taking facts that are established, that everyone basically stipulates to, and applying those facts to a legal analysis of the merit system principles. Those are found in 5 U.S.C. 2301B. And there's basically nine different principles. Let me be completely honest. I do not understand this argument at all. This is a whistleblower appeal, right? Yes, Your Honor. And so she was removed, which is a personnel action. She established that she made a disclosure that was a contributing factor, and then the agency, according to the administrative judge, met its burden of proving by clear and convincing evidence that it would have taken this action otherwise. What do the merit system principles have to do with whether or not the agency would have taken this removal action? Well, the primary one is training, adequate training. And that gets in—it really affects the entire—much of the case, or the appeal, in the sense that you're talking about an individual that had no prior orthopedic— I get this, but I don't understand the connection. Even if we agree with you that she didn't get adequate training, the agency still set forth facts showing why they removed her. But those facts— She wasn't performing her duties. She had all kinds of problems. This is a very—and the administrative judge wrote an incredibly detailed, exhaustive decision here. It's one of the lengthier decisions I've seen supporting this. And he set forth, or she set forth, I forget which it is, numerous reasons why the agency met its burden. Even if the agency didn't train her properly, that's not a defense. I mean, you're not—this is not a removal action. You're not defending against her removal because she didn't have a right to appeal her removal. If this was a removal, maybe you could have shown as an affirmative defense that she wasn't trained properly. But why these things—try one more time to explain to me how failing to train her impacted the agency's proof that it would have removed her for all the problems it demonstrated. Well, I think the merit system principles give you context and environment in which that training, how it should occur. And the VA has set up what's called—and you'll see it's ad nauseum in the brief— the FPPEs, the Focused Professional Evaluations, essentially. And those are supposed to be done at the beginning of an employee's tenure or employment. And ultimately, the basis is to give them feedback. Here's what's wrong. Here's what you're not doing right. And as Dr. Hong, the chief of surgery, had testified to, yes, they get the FPPE. It is a helpful tool. And they sign off on it at the beginning, the employee does, Ms. Sheridano did. And they did five FPPEs on her. What does any of that have to do with the legal challenge you're raising under the Whistleblower Protection Act? Because the merit system principles still have—this court has a jurisdiction, and they do apply to a whistleblower act. It's 2301. The 2302, right next to it, same part, dealing with same employees. Can you just say—let's assume you're right, that they violated these merit systems principles by not getting her proper training. What's the legal basis, given that, to reverse the board's finding that the agency showed by clear and convincing evidence that it would have removed her even with knowledge of her disclosure? Because the entire training was basically a sham. And, again, I'm not trying to get into the argument of the facts, but they're basically moving to remove her within days of her blowing the whistle. And they failed to give her enough PPE until they already removed her from care seven months later. That's your problem here. You're not addressing the right thing. The agency gave a number of reasons why it would have removed her. The board found, by clear and convincing evidence, that those reasons were correct and supported her removal. You have not once mentioned one of those reasons and why the agency and the board were incorrect in finding those reasons were sufficient. Well, again, it's the context of the training. And if they're not providing proper— Can you—OK. Yes, sir. We get your argument on the training. Let's just assume we disagree. Do you have anything else in this case? We have—again, it bleeds into the PPEs, but it's a sham. It was a sham process, the PSP, the information it's considering. She didn't even see these at 4B. Do you have any good analogous case to support your arguments you're making to us here today? I'm sorry. Can you say that? Do you have any good analogous case you can point us to to support the arguments you're making here today? The cases generally that have applied it are dealing with federal employees because they applied, but those are adverse action cases also under Chapter 3. Where they raise it as a defense. They raise it as a claim, I believe. This is—yeah, this is— That claim's not available to you here, right? This is not an appeal of an adverse action. No, it's not, but it's under the same chapter. I don't have a case that is on point. I don't know what you mean when it's under the same chapter. Chapter 3 deals with federal employees. Right, but, I mean, adverse actions are under Chapter 75. Whistleblower appeals are—the IRA appeals are what, 1221? I mean, they're not the same parts of the statute. They're different parts of the statute. They're both in Title 5. But I think they're both Part 3, is my— I don't know what you're saying when you refer to 3. Adverse actions are 5 U.S.C. 70—Chapter 75. Whistleblower appeals are 5 U.S.C. 1221 or something like that. I don't know where the 3 comes from, unless it's just a subpart of Chapter—of Title 5. But they're not the same chapters. There's a whistleblower appeal, and there's an adverse action appeal. And then there's also a different—under Chapter 43, performance appeals, which, if she'd been an employee, maybe that's the route they'd go. They didn't have to go any of these routes because she was a probationary employee, and they didn't have to give her any of that due process. So she has to meet her burden under the whistleblower statute, which requires she now show why the board's decision that the agency would have removed her and prove that by clear and convincing evidence, why that factual decision is not supported by substantial evidence. You have not made one argument about why the board's decision is not supported by substantial evidence. Well, there's the cat's paw argument. It's a sham proceeding. The board proceeding was a sham. And the fact that even the judge herself notes in footnote 48 how heavily they relied upon these FPPEs. She didn't see these FPPEs until the board did, except for the one. They had five FPPEs against her, critiquing her, all negative. She was—none of them were shared with her until—except for one—until the board, until they went to the board, and then she was given copies. First time she's ever seen them. That's a sham. Why is that a sham? I mean, there might be some procedural problems there. But are you—I mean, the board found those reports to be truthful and not a sham. So you have to explain why those reports are just incorrect. The fact that they never shared them with her, the fact that Mark Rosas, the HR director— Or is it just the fact that they didn't follow what you think is the right procedures in sharing with her? I think they're illegitimate. Why? Do you think that they created them after the fact to support the removal? There's no evidence for that on the record, right? Well, there's evidence that they, from the get-go in September, had already decided we need to start removing her. These FPPEs came out— That's pretty understandable, isn't it? If they think she's not performing well and her probation period is coming up, they've got to take action. Otherwise, it turns into a federal employee and it becomes much more difficult. I understand that, Your Honor. Can I ask you this? We've been talking about what I think are called the car factors. The board found, by clear and convincing evidence applying the car factors, that the agency would have removed your client regardless of any other concerns you've raised, right? The board found that, correct? Yeah. And I don't see that you have challenged those findings. Is that right? No, we're not re-arguing those facts. We're arguing the context of the merit system principles. So as the case comes to us, we have to accept as true that it's been determined by clear and convincing evidence that the same agency action would have been taken regardless of your arguments to us, correct? No, in the sense— Again, I think if you look at the judge's order, she talks about how much the FPPEs influenced or how much they were intertwined with the decision to remove her. Your answer, Your Honor, is out of time. Do you want to save it? I'll save it, yes. Thank you.  May it please the court. This is indeed a very narrow case. And the court should affirm, because there is substantial evidence supporting all of the findings of the board in this case, that the Veterans Administration would have taken the very same personnel actions in the absence of her September 2014 protective disclosure. And as the court points out, what's at issue here is the application of the CAR factors. But that's not really being challenged. The judge— May I ask you to—I know you don't agree that these merit system principles were violated, but just for purposes of hypothetical, let's just assume they were. Are you aware of any legal authority in a whistleblower case that that would have any relevance? No, I'm not. But if we look at this particular case here, when the judge applied the CAR factors, he paid careful attention to the individuals involved. And, for example, Dr. Jones, who was involved in the training. So you have in the decision very careful findings as to whether Dr. Jones had a motivation, the strength of his motivation, or whether he had any motivation. And there the judge makes particular findings about training and the training that Dr. Jones gave to Ms. Sharadona. And he looks at the whole circumstances. And looking at the whole circumstances, he makes the ultimate finding that the agency would have taken the same personnel actions in the absence of the protected disclosure. But he does realize that Dr. Jones is involved in the training, and he looks at his behavior in terms of whether he has a motivation. So I think that there is, in the circumstances of this case, training is one thing that the judge properly looked at. But it's not a case about whether she was given the proper training. That's not the issue here. He looked at, the judge looked at training in assessing motivation. And also with respect to core factor two, the judge looked at the nature of the disclosure itself. And here it was a simple disclosure about Dr. Jones was not aware you had to throw out these medicine vials. And once he was told that you have to throw them out, then he complied. And these were multi-dose vials, which in the private sector you could have used twice, but not at the VA. With regard to the FPPE, the focused professional practice evaluation, I just want to make a couple points. First of all, that's required. You have to have a, if you have clinical privileges, which is what she had in this new job, then you have to have a FPPE. And that's in the national guidance, and the appendix site would be 732. So here she had to have an FPPE. And you have very, very detailed findings in the opinion, which I can go through if you see any need. But, okay, so just to be clear, it is required that you have an FPPE. And then it's also required for a probationary employee that you go in front of a professional standards board. And that's also a matter of national guidance, and the site for that would be at 734 in the appendix, where it sets out that you have to go before a professional standards board before a decision is made on whether you are retained as a VA employee. If the court has no further questions. If we were to, part of the situation here seems to be I'm not sure there's legal authority for anything that Ms. Sherdonoff is arguing. If that were to be our finding, should we consider dismissing this appeal, or would it still be an affirmance? I think it's an affirmance. The court has jurisdiction. I'm not aware of a case where the court would dismiss just because they thought the arguments were meritless. It is within your jurisdiction, so I think it leads to an affirmance. Just one other quick question. They talk about transfer in the brief that the board or the agency should have considered transferring Ms. Sherdonoff. Given the findings that were made in the FPPEs and by the board, PSB I think it was, was transfer an option, or did she have to be terminated? She had to be terminated. But to be more specific, what she was asking for was essentially a reassignment. To stay within the Bay Pine system and to move to another clinical position. You couldn't move her to another clinical position. Based on those findings. Yes, and the appendix site for that would be 649. That's an email from Dr. Baumann, who was the chief of orthopedics and the surgeon involved. Thank you. Mr. Tovani, you have about four minutes left. Thank you, Your Honor. Again, the FPPEs, as counsel has pointed out, are required. She's supposed to see them in a timely manner. The first set, actually all of them covered a period of July to October. She didn't see the first one until February. Again, the merit system principles specifically say employees should be retained on the basis of their adequacy of performance. Inadequate performance should be corrected. If she's not being given any kind of feedback, which the FPPEs are, substantial feedback, again, that's why the PSB reviewed them, that's why the judge mentioned what she mentioned, as to how intertwined they were with the decision, then it's failing these principles. She's not being trained properly. She's not being provided the resources that the agency itself utilizes to train personnel. And, again, these are documents now without any feedback from her or any input from her with the FPPEs because she's not seeing four out of five of them until she goes to the board. It taints the process. The board is reviewing something that is a sham in the sense that she was never able to share in it and share in that process. She didn't sign off on those. So it taints the entire process. And we mentioned the CATS Call theory as far as what the PSB was relying upon. And the agency, in its brief, had said that there's no published opinion where this court has adopted the CATS Call outside of a discrimination case. Well, it wouldn't be dealing with a discrimination case. Outside of a discrimination case. This court, however, did in that it rejected, this court rejected the CATS Call theory, citing the Howard case for that. Actually, the court rejected the CATS Call theory, not necessarily applying to this scenario, but just on the facts in that case, that the facts themselves did not support utilizing a CATS Call. So, again, as far as a reassignment. You're not implying that you have case law that supports using CATS Call in the whistleblower context, are you? No. This court has considered it, but it was not in a published opinion. Honestly, I don't understand how it comes in anyway. It's already really covered in the car factors where you look at the agency deciding official's motivation and see if that was valid or not. I mean, that's kind of the point of the CATS Call theory is to make sure that the deciding official isn't tainted by the lower, you know, the proposing official. But, again, if they're reviewing FPPEs, and they did with the car factors. I mean, they looked at this information. The FPPEs contained a lot of the same information that they were considering. But you had an opportunity to show that those FPPEs were invalid at the hearing. Well, and she raised it. And you did it. Well, she did raise it, and she questioned it. But whatever the VA board has called didn't find them invalid, and the administrative judge here didn't find them invalid. So you would just lose on the facts even if we accepted the CATS Call theory, wouldn't you? Again, I think they're all related, though. They're all intertwined, and even the judge said that herself. Go to the final thought. As far as the transfers go, she would have gone anywhere. She didn't have to stay in Bay Pines. She was already successful at a California facility. Thank you. Case is submitted.